In the Matter of DAVID R. WHITE, Appellant, v EDWARD V. REGAN, Individually and as New York State Comptroller, et al., Respondents. (Proceeding No. 1.)

In the Matter of CHATEL ASSOCIATES, Appellant, v EDWARD V. REGAN, Individually and as New York State Comptroller, et al., Respondents. (Proceeding No. 2.)

Third Department, October 24, 1991

198

**APPEARANCES OF COUNSEL**

*Sinzheimer & Keefe, P. C. (Peter J. Molinaro* of counsel), for appellants.

*Robert Abrams, Attorney-General (Kathleen L. Morrison* of counsel), for respondents.

**OPINION OF THE COURT**

MERCURE, J.

In each of these CPLR article 78 proceedings, the petition alleges, *inter alia,* that petitioner unwittingly took title to real property containing one or more undisclosed underground

petroleum storage tanks, that the tank or tanks had previously leaked, causing a discharge of petroleum, that petitioner incurred expense in remediating the contamination, and that petitioner subsequently made application for and was wrongly denied reimbursement of cleanup and removal costs from the State Environmental Protection and Spill Compensation Fund (hereinafter the Fund; *see,* Navigation Law art 12) upon the ground that petitioner was a discharger under the Navigation Law and, thus, responsible for the cost of cleanup and removal. In each case, Supreme Court dismissed the petition due to lack of subject matter jurisdiction, holding that petitioner was required to proceed in the Court of Claims, and petitioner has appealed to this court. We agree with Supreme Court's dismissal of the petitions, although for entirely different reasons.

■ Initially, we agree with petitioners that Supreme Court incorrectly dismissed their petitions for lack of subject matter jurisdiction. "Under CPLR 7803 (3), Supreme Court has subject matter jurisdiction over a proceeding challenging an administrative agency determination on the ground that it 'was arbitrary and capricious' " *(Matter of Gross v Perales,* 72 NY2d 231, 235). "However, '[a]ny restitution or damages granted to the petitioner must be incidental to the primary relief sought by the petitioner' " *(supra,* at 235, quoting CPLR 7806). Here, the monetary relief sought by petitioners is merely incidental to the primary relief sought because it may be recovered only if the challenged determination is found to be irrational *(see, Matter of Gross v Perales, supra,* at 236). In view of the fact that the proceedings may be determined by resolution of two legal issues, we shall dispose of the petitions rather than remit them to Supreme Court for determination.

■ Turning to the merits, we reject the contention that the Fund Administrator acted irrationally in denying petitioners' applications for reimbursement of cleanup and removal costs incurred in remediating their respective petroleum discharges. Even accepting the contention that all discharges of petroleum occurred prior to petitioners' ownership of their respective parcels of land and that petitioners were unaware of and did nothing to contribute to the contamination, it is nonetheless our view that petitioners are dischargers of petroleum within the purview of Navigation Law § 172 (8) and, thus, not eligible for reimbursement *(see,* Navigation Law § 181 [1]; *State of New York v Stewart's Ice Cream Co.,* 64 NY2d 83, 87-88). This court has consistently construed Navigation Law

§ 181 (1) so as to impose liability on the owner of a system from which a discharge occurred in the absence of evidence that the owner caused or contributed to the discharge *(see, State of New York v Wisser Co.,* 170 AD2d 918, 919; *State of New York v New York Cent. Mut. Fire Ins. Co.,* 147 AD2d 77, 79). Further, in *State of New York v King Serv.* (167 AD2d 777, 778), we considered and rejected the contention of the current owner of a petroleum storage system that liability for payment of cleanup and removal costs should be shifted to the entity which owned the system at the time the discharge occurred or began, holding that the current owner's liability was "predicated on [its] own status as a discharger". Here, as in that case, "[the current owner's] remedies lie with its direct claims against [the prior owner] * * * predicated upon [the prior owner's] liability as a discharger" *(supra,* at 779), should it be so advised.

The imposition of strict liability upon the owner of the system at the time of discovery of the discharge is entirely consistent with the over-all State and Federal statutory and regulatory scheme for the prevention and remediation of accidental discharges of petroleum. The 1983 Control of the Bulk Storage of Petroleum Act (ECL 17-1001 *et seq.),* with legislative goals almost identical to those underlying Navigation Law article 12 *(compare,* ECL 17-1001, *with* Navigation Law § 170; *see, Matter of Consolidated Edison Co. v Department of Envtl. Conservation,* 71 NY2d 186, 193-194), and regulations promulgated thereunder (6 NYCRR parts 612-614) impose upon the current owner the financial obligation for proper closure of out-of-service petroleum storage facilities *(see,* ECL 17-1003 [4]; 17-1005 [2] [b]; 6 NYCRR 613.9 [b], [c]), including the disposition of waste products in accordance with all State and Federal requirements (6 NYCRR 613.9 [b] [1] [i]). To permit facile avoidance of this obligation under the circumstances presented here would run counter to the intent of the Legislature and could seriously impair the Fund and its appropriate beneficiaries. Considering the same issue posed here, but arising under the Federal Clean Water Act, the Federal District Court for the Western District of Pennsylvania reasoned:

"When a spill is discovered, response must be swift. If the Government must bear the cost of cleanup, there must be a ready pocket for reimbursement. It is the owner or operator at the time the spill is first discovered who has control of the site and the source of discharge. He is readily identifiable. He is

most likely to be in position to halt the discharge, to effect an immediate cleanup, or to prevent a discharge in the first place. If the onus of cleanup falls on the Government, he is the clearest and most expeditious source for reimbursement.

"On the other hand, if the Government must search in the past for the date of initial discharge and the identity of some past owner or operator, the purpose of the Act is thwarted" (Quaker State Corp. v United States Coast Guard, 681 F Supp 280, 285).

Our determination that, as system owners, petitioners were not entitled to reimbursement of cleanup and removal costs, as a matter of law, renders academic petitioners' remaining claims concerning the processing of their respective claims.

■ We also reject petitioners' claims of violation of the Freedom of Information Law (Public Officers Law art 6; hereinafter FOIL). In each case, petitioner made a FOIL request as to the number of claims filed with the Fund and the number granted or denied. Upon being told that 207 claims had been filed but that no records were kept of the number granted or denied, petitioners further requested copies of any writings evidencing final determinations in any of those 207 claims. The Fund's records access officer responded that not all claims resulted in a final determination, and petitioners' requests would require the Fund to compile statistics which it was not required to keep, something the law did not require. Subsequently, the Fund notified petitioners that they would be allowed access to the files of all claims for their own examination. In our view, this offer mooted petitioners' claims. The Fund is not required to compile information or to rearrange its filing system so as to facilitate petitioners' research (see, Matter of Wattenmaker v New York State Employees' Retirement Sys., 95 AD2d 910, lv denied 60 NY2d 555; Matter of Gannett Co. v James, 86 AD2d 744, 745, lv denied 56 NY2d 502). The Fund's grant of access at a reasonable time to its voluminous file containing the requested documents was sufficient to meet its obligation under FOIL (see, Matter of Schanbarger v New York State Commr. of Social Servs., 99 AD2d 621, 622, lv dismissed 62 NY2d 604; Matter of D'Alessandro v Unemployment Ins. Appeal Bd., 56 AD2d 762). Finally, Supreme Court did not abuse its discretion in denying petitioners' requests for an award of counsel fees.

MAHONEY, P. J., CASEY, WEISS and CREW III, JJ., concur.

Ordered that the judgments are affirmed, without costs.