Matter of Korn v Korn (2022 NY Slip Op 04095)

Matter of Korn v Korn

2022 NY Slip Op 04095

Decided on June 23, 2022

Appellate Division, First Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: June 23, 2022

Before: Renwick, J.P., Kern, Kennedy, Mendez, Higgitt, JJ. 

Index No. 2001-4153 Appeal No. 16183 Case No. 2021-01366 

[*1]In the Matter of Edward D. Korn, Petitioner-Respondent-Appellant,
v
Robert B. Korn, Objectant-Appellant-Respondent. 

Morrison Cohen LLP, New York (David A. Piedra of counsel), for appellant-respondent.
Bryan Cave Leighton Paisner LLP, New York (Courtney J. Peterson of counsel), for respondent-appellant.

Order, Surrogate's Court, New York County (Rita Mella, J.), entered on or about March 17, 2021, which, to the extent appealed from as limited by the briefs, after a nonjury trial of objectant's objections to a voluntary accounting, overruled the objections as to petitioner's alleged failure to account for certain tangible property, including a coin collection and jewelry, and the objections as to petitioner's calculation of the value of the Bordeliw Account and objectant's request for interest on the cash bequest; sustained the objections as to petitioner's breach of fiduciary duty in connection with the sale of the Florida Flats property and directed petitioner to allocate one half of a settlement premium obtained in connection with the sale to the estate and to pay objectant prejudgment interest from the date of sale until October 2009; and held in abeyance the objections as to the allocation of attorneys' fees related to the sale, unanimously modified, on the law, to award objectant prejudgment interest until entry of final judgment, and otherwise affirmed, without costs.
Petitioner's removal of the coin collection out of state was not improper because the coin collection did not belong to the decedent (see SCPA 710 [4]; 711 [7]). While the removal of other tangible property, including jewelry, was improper, no harm to the estate resulted, as that property was subsequently returned and accounted for (see Matter of Petrocelli, 307 AD2d 358, 360 [2d Dept 2003]).
Petitioner breached his fiduciary duty by failing to distribute the estate's interest in the Florida Flats property to objectant before selling it. Distribution was not prohibited by the October 14, 2005 order entered in the action by the other owners of the property to compel its sale (the 245 Action) (see 245 E. 19th St. Assoc., LLC v Mayer, 2005 NY Slip Op 30364[U] [Sup Ct, NY County [2005]). Although that order prohibited petitioner and objectant from interfering with the sale, the sale would not have been affected by a distribution, as objectant was also ordered to sign the Purchase and Sale Agreement (PSA).
Petitioner also breached his fiduciary duty by allocating the entire $2.4 million premium received for settling the above-referenced action to the marital trust and failing to negotiate an equivalent premium for the estate. Petitioner admitted that he believed a $2.4 million premium for the estate was attainable but that he left the negotiation of same to objectant. This was improper, as objectant had neither the right nor the duty to negotiate on behalf of the estate (see EPTL 11-1.1 [b] [13]; 245 E. 19th St. Assoc., LLC v Mayer, 32 AD3d 316, 317 [1st Dept 2006]). Even if objectant's agreement to sign the settlement agreement and PSA were necessary to secure such a premium, petitioner could have negotiated a premium conditioned on receipt of these signatures and, if objectant failed to sign, the fault would have been his own. Alternatively, petitioner could have sought authorization [*2]to settle the claim pursuant to SCPA 1813 or sought to have petitioner appointed as a limited administrator to negotiate the sale.
Prejudgment interest in connection with the breaches should have been awarded from the date of the sale until the entry of judgment. Once the court decided to award pre-decision interest under CPLR 5001, it had no discretion to stop interest before the date of the decision. An award of interest from decision to entry of judgment was also mandatory under CPLR 5002. Objectant's arguments regarding CPLR 5003 are, however, premature, as no final judgment has yet been entered.
The court providently exercised its discretion in declining to award objectant a $2.4 million surcharge. The reallocation of one-half of the trust's premium to the estate, plus the denial of commissions to petitioner for his work as executor, were sufficient to redress the breaches. Although objectant was "entitled to be put in the position which [he] would have occupied if no breach of duty had been committed" (see Matter of Rothko, 84 Misc 2d 830, 872 [Sur Ct, NY County 1975], mod on other grounds 56 AD2d 499 [1st Dept 1977], affd 43 NY2d 305 [1977]), it cannot be assumed that, even if petitioner had negotiated a $2.4 million premium for the estate, objectant would have chosen to accept it if it meant having to sign the settlement agreement and PSA (see Matter of Lasdon, 105 AD3d 499, 499-500 [1st Dept 2013], lv denied 22 NY3d 856 [2013]).
The court properly concluded that objectant was collaterally estopped from challenging the sale price of the Florida Flats property. Both petitioner and objectant argued in the 245 Action that the price was unreasonably low due to collusion. Objectant was clearly a party to the 245 Action, even if not a proper one. He was also in privity with petitioner as a beneficiary of the estate of which petitioner was executor (see Shaw Family Archives Ltd. v CMG Worldwide, Inc., 2008 WL 4127830, *8-9, 2008 US Dist LEXIS 67529, *23-27 [SD NY, Sept. 2, 2008, No. 05 Civ. 3939 (CM)]).
Objectant's argument with respect to the allocation of attorneys' fees is premature, as no decision has yet been made on the related objections, which were held in abeyance.
Petitioner acted properly in seeking and securing a capital gains discount on the valuation of the Bordeliw Entity, thereby reducing the tax liability of the estate, and in applying that same capital gains discount to the valuation of the Bordeliw Account. The will specified that the cash bequeathed to respondent should be "equal to the value, as finally fixed and determined for Federal estate tax purposes" of the Bordeliw Account. Although the IRS did not specifically approve the valuation of the Bordeliw Account standing alone, its finally fixed value for federal estate tax purposes of the Bordeliw Entity as a whole included a capital gains discount. The IRS thus implicitly approved application of the discount to each of the Bordeliw's Entity's assets, including the Bordeliw [*3]Account.
Interest was properly denied as to the cash bequest of the Bordeliw Account. Objectant received payment approximately one month after the value of the Bordeliw
Entity was finally fixed for estate tax purposes, which was a prerequisite to the determination of the value of the bequest. That was not an unreasonable delay (see EPTL former 11-1.5 [e]).THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: June 23, 2022